UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVON C. QUIERO, JR., | |
| Plaintiff, | CIVIL ACTION NO. 3:14-CV-00225 |
| v. | (CAPUTO, J.) |
| | (MEHALCHICK, M.J.) |
| OFFICER MUNIZ, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This is a civil rights action initiated upon the filing of a complaint in this matter by *pro se* prisoner-Plaintiff Avon Quiero on February 10, 2014. (Doc. 1). Quiero seeks an award of compensatory and punitive damages under 42 U.S.C. § 1983 against Defendants Officer Daniel Muniz, Captain Michael Ott, and Warden Robert Karnes. (Doc. 1). He asserts claims of sexual harassment and unconstitutional conditions of confinement under the Fourteenth Amendment against Muniz; a First Amendment free exercise claim, a First Amendment retaliation claim, a pair of Fourteenth Amendment due process claims against Ott; and a general supervisory liability claim against Karnes for allowing these constitutional violations to occur. (Doc. 1, at 5). On July 14, 2014, Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12), and filed a brief in support of the motion two weeks later. (Doc. 14). Quiero filed his brief in opposition on September 9, 2014. (Doc.

19).[1] On September 22, 2014, Defendants filed a reply to Quiero's brief in opposition. (Doc. 20). Having been fully briefed, this matter is now ripe for disposition.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

At all times relevant to this complaint, Quiero was detained awaiting trial at Lebanon County Correctional Facility ("LCCF") in Lebanon, Pennsylvania. (Doc. 1). All Defendants were employed as LCCF corrections officers or administrators at the time of the events alleged in Quiero's complaint.

On the evening of October 22, 2013, Quiero was issued a bedsheet by Officer Muniz. (Doc. 1, at 2, 3, 5). The bedsheet was covered with obscene phrases and images of male genitalia. (Doc. 1, at 5). Quiero was offended by the graphic depictions on the bedsheet and requested a replacement from Muniz. (Doc. 1, at 5). Muniz refused this request despite numerous pleas from Quiero stating that he felt sexually harassed. (Doc. 1, at 5). Quiero chose to return the offending bedsheet to Muniz and filed an emergency grievance that night. (Doc. 1, at 5). Quiero spent "a cold night" in his cell without a bedsheet and was issued a new sheet an hour before breakfast the next morning. (Doc. 1, at 5).

Throughout the following day, Quiero attempted to file a grievance against Muniz in response to the bedsheet incident.[2] (Doc. 1, at 6). Specifically, Muniz filed an internal request and an emergency grievance in an effort to obtain the proper grievance form, but states that

---

[1] Quiero initially filed this brief on July 25, 2014, before the Defendants filed their brief in support. (Doc. 13). The Court *sua sponte* granted Quiero the opportunity to refile his brief in opposition because he was transferring between prisons at the time of filing. (Doc. 18). Quiero, however, opted to refile his original brief in opposition and left everything but the date unchanged. (Doc. 19).

[2] Quiero does not state whether he received a response to his emergency grievance from the night before.

Captain Ott, the director of security, refused to issue him the form.[3] (Doc. 1, at 6). On October 27, 2013, Quiero obtained a formal grievance form from a deputy warden and filed his grievance the same day. (Doc. 1, at 6). Quiero blames Ott for the four-day delay in filing his grievance, alleging that Ott obstructed Quiero's grievance efforts by refusing to provide a grievance form, refusing to allow Quiero to contact his family or the police, and requiring Quiero to use the prison mail system, which is subject to screening by corrections officers.[4] (Doc. 1, at 6).

On October 28, 2013, less than a day after the grievance was filed, Ott placed Quiero in the Restricted Housing Unit ("RHU"). (Doc. 1, at 6). Quiero alleges that he was sent to the RHU in retaliation for his grievance against Muniz. (Doc. 1, at 6). Quiero remained in the RHU for two weeks, during which time he was denied access to bible studies, church services, and the chaplains. (Doc. 1, at 6). He was also unable to contest his placement in RHU through a disciplinary hearing. (Doc. 1, at 6).

On November 6, 2013, while still housed in RHU, Quiero appeared in court for a bail hearing wearing the red jumpsuit assigned to inmates on disciplinary status. (Doc. 1, at 6). Quiero alleges that he was prejudiced by appearing in the red jumpsuit, and that his bond was set at $50,000. (Doc. 1, at 6). At the bail hearing, Quiero also told the judge about the events that had transpired over the past two weeks. (Doc. 1, at 6). The following day, Quiero was

---

[3] Quiero goes on to state that he was able to obtain assistance from the prison chaplain later that day. (Doc. 1, at 6).

[4] Quiero does not allege that the four-day delay in filing his grievance was somehow prejudicial to his grievance process. Quiero states that in addition to filing a formal grievance, he also contacted the Court of Common Pleas and local police about the bedsheet incident, but he does not explain how he was able to do so given his allegation that Ott prevented him from contacting his family and the police. (Doc. 1, at 6).

removed from RHU and returned to his old cellblock after a brief hearing in which he received no official comment or ruling from prison officials.[5] (Doc. 1, at 6).

Quiero frequently petitioned Warden Karnes's office for relief from the time he was first sent to the RHU until the filing of the instant complaint three months later. (Doc. 1, at 7). While in the RHU, Quiero requested to be moved back to his cellblock or to at least receive a disciplinary hearing, but both requests went unanswered. (Doc. 1, at 7). He also petitioned to be allowed to wear an orange jumpsuit (as opposed to the red RHU jumpsuit) to his bail hearing and to be granted access to religious staff and services while in the RHU, but both of those requests were denied outright. (Doc. 1, at 7). Finally, Muniz continued to periodically patrol Quiero's cellblock despite repeated requests from Quiero to have him reassigned. (Doc. 1, at 7). Quiero argues that Karnes's lack of a response to these petitions for relief empowers LCCF staff to commit further abuses, and thus fosters a culture that is harmful to inmates and detainees. (Doc. 1, at 7).

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of*

---

[5] The dates Quiero provides would put the amount of time he served in the RHU at ten days, as opposed to two weeks. (Doc. 1, at 6). Elsewhere in his complaint, Quiero notes being placed in the RHU for "over a week." (Doc. 1, at 7). Regardless, whether Quiero served ten or fourteen days in the RHU is immaterial to his complaint.

4

> *Allegheny*, 515 F.3d 224 (3d Cir. 2008) ] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.
>
> *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### III. DISCUSSION

Quiero's complaint asserts a federal civil rights claim brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Quiero asserts the following constitutional tort claims:

- that Muniz sexually harassed him in violation of the Fourteenth Amendment;

- that Muniz subjected Quiero to constitutionally insufficient conditions of confinement under the Fourteenth Amendment where he did not provide Quiero with a replacement bedsheet after Quiero refused to sleep with a blanket covered with obscene phrases and images;

- that Ott retaliated against Quiero in violation of the First Amendment by sending him to the RHU for filing a grievance against Muniz;

- that Ott violated Quiero's right to due process under the Fourteenth Amendment by denying Quiero access to grievance forms and not allowing him a hearing to challenge his placement in the RHU;

- that Ott violated Quiero's First Amendment right to freely exercise his religious beliefs by denying him access to religious services while in the RHU; and

- that Ott violated Quiero's right to due process under the Fourteenth Amendment by requiring him to wear the red RHU jumpsuit to his bail hearing.

(Doc. 1).

Finally, Quiero also asserts that Karnes is liable for each of the above constitutional violations in his supervisory role as warden of LCCF. (Doc. 1, at 7).

Quiero devotes much of his brief in opposition to Defendants' motion to dismiss arguing that he was entitled to heightened constitutional protections because he was a pre-trial detainee rather than an inmate at the time these alleged violations occurred.[6] (Doc. 19, at 3-4). He is

---

[6] Defendants assert that Quiero failed to raise the fact that he was a pre-trial detainee in the complaint itself, and that he instead states this for the first time in his brief in opposition. (Doc. 14, at 5-6). *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rule . . . 12(b)(6)."); *Commw. of Pa. Ex. Rel Zimmerman v. PepsiCo., Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a
*(footnote continued on next page)*

correct in the sense that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 445 (1979). Whereas the Eighth Amendment protects inmates from "cruel and unusual punishments," the due process clause of the Fourteenth Amendment proscribes all actions imposed against pre-trial detainees as "punishments," because pre-trial detainees have not been adjudged guilty. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). In determining whether a restriction imposed by prison officials constitutes punishment, the Third Circuit has advised:

> [A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.
>
> *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

The Third Circuit further instructs that "[i]n assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions 'cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (3d Cir. 2005) (quoting *Union County Jail Inmates v. DiBuono,* 713 F.2d 984, 992 (3d Cir.1983)).

---

motion to dismiss.") (quotations omitted). However, given the Court's obligation to liberally construe *pro se* complaints, we find Quiero's statement in his complaint that he attended a bail hearing while in the RHU to sufficiently infer that he was a pre-trial detainee at the time these events occurred.

Quiero's reliance on his pre-trial detainee status does not necessarily have bearing on any of his challenges to LCCF restrictions that arise out of constitutional provisions other than the due process clause of the Fourteenth Amendment. Although pre-trial detainees "retain at least those constitutional rights . . . enjoyed by convicted prisoners," *Bell*, 441 U.S. at 445, the practical application of those rights is often identical when outside the scope of the Fourteenth Amendment's prohibition against detainee punishment. *See generally Bell*, 441 U.S. at 445-48. "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention." *Bell*, 441 U.S. at 540. Furthermore, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell,* 441 U.S. at 547. Accordingly, because the security and administrative interests of corrections officers apply equally to pre-trial detainees and inmates, courts generally analyze a detainee's allegations of constitutional harm under the same standard as they address claims made by a sentenced inmate unless there is a specific legal standard applicable to detainees for that particular constitutional harm. *See, e.g.*, *Adegbuji v. Green*, 280 F. App'x 144, 148 (3d Cir. 2008) (upholding dismissal of detainee's First Amendment free exercise and retaliation claims while applying the constitutional standard established for sentenced inmates).

A. CLAIMS AGAINST MUNIZ

   1. **Sexual Harassment Claim**

Quiero first alleges that he was sexually harassed by Muniz where Muniz provided him with a bedsheet covered in obscene phrases and images. (Doc. 1, at 5). The due process clause

of the Fourteenth Amendment protects pre-trial detainees from sexual harassment at the hands of corrections officers because wanton and unnecessary abuse serves no legitimate penological purpose. See *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, "[a]llegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner." *Brown v. Hamilton Police Dep't*, No. CIV.A. 13-260 MAS, 2013 WL 3189040, at *2 (D.N.J. June 21, 2013) *aff'd sub nom. Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.*, 547 F. App'x 96 (3d Cir. 2013). As is the case with verbal threats, the issuance of the defaced bedsheet here did not cause Quiero any actual injury or harm. (Doc. 1, at 5). Although the Court does not doubt that Quiero felt genuinely offended by the bedsheet, detainees are not afforded Fourteenth Amendment protection for such *de minimus* discomforts. *Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.*, 547 F. App'x 96, 97-98 (3d Cir. 2013). Muniz's issuance of the defaced bedsheet could not have caused Quiero "genuine privations and hardship over an extended period of time," so this offense does not meet the standard of hardship required to invoke Fourteenth Amendment due process protection. *Bell*, 441 U.S. at 542. The Court therefore recommends that Quiero's sexual harassment claim against Muniz be dismissed with prejudice.

### 2. Unreasonable Conditions of Confinement Claim

Quiero next alleges that Muniz subjected Quiero to constitutionally insufficient conditions of confinement under the Fourteenth Amendment where Muniz did not provide Quiero with a replacement bedsheet after Quiero returned the bedsheet covered with obscene phrases and images. (Doc. 1, at 5). As noted above and in the Defendants' brief in support of their motion to dismiss, Quiero was provided constitutionally sufficient bedding that he refused to use because it was covered in obscene images and phrases. (Doc. 14, at 9). Moreover, Quiero

does not allege that spending the night without a bedsheet caused him injury or genuine hardship for an extended period of time. *Compare Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.*, 547 F. App'x 96, 97-98 (3d Cir. 2013) (finding no due process implications where detainee was denied feminine products for a few hours), *with Bowers v. City of Philadelphia*, No. CIV.A. 06-CV-3229, 2007 WL 219651 (E.D. Pa. Jan. 25, 2007) (holding that detainees suffered due process violation where they were forced to sleep on wooden benches or the concrete floor without any beds or bedding for three to ten days and many detainees developed medical problems as a result). Accordingly, Quiero's claim that he was denied a bedsheet overnight also fails as a *de minimus* discomfort that is not protected by the due process clause of the Fourteenth Amendment, and it is recommended that this claim be dismissed with prejudice.

B. CLAIMS AGAINST OTT

1. **Retaliation Claim**

Quiero claims that Ott retaliated against him in violation of the First Amendment. (Doc. 1, at 6). In order to establish a prima facie case of First Amendment retaliation, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights . . . .'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Here, Quiero alleges that he engaged in constitutionally protected conduct by filing his grievance against Muniz, that he suffered retaliatory action at the hands of Ott by being placed

in the RHU, and that he was placed in the RHU as a direct result of filing his grievance. (Doc. 1, at 6). The Third Circuit has recently held that the retaliatory conduct of confining an individual to the RHU could sufficiently deter a person of ordinary firmness from exercising his First Amendment rights. *Fantone v. Latini*, 780 F.3d 184, 191-92 (3d Cir. 2015), *as amended* (Mar. 24, 2015). Furthermore, Defendants do not contend that Quiero failed to state a cognizable claim of retaliation.[7] (Doc. 14, at 3). The Court therefore concludes that Quiero has adequately pled a retaliation claim under the First Amendment.

### 2. Due Process Claim Involving Access to Prison Grievance Procedures

Quiero's second claim against Ott alleges that Ott violated his right to due process under the Fourteenth Amendment by denying Quiero access to grievance forms and not allowing him a hearing to challenge his placement in the RHU. (Doc. 1, at 6). The Third Circuit has explained that "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the [RHU] without explanation or review of their confinement." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007). Moreover, "[t]he Supreme Court has repeatedly stated that '[t]he core of due process is the right to notice and a meaningful opportunity to be heard.'" *Stevenson*, 495 F.3d at 69 (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)). Construed liberally, Quiero's complaint alleges that he was detained in the RHU without any explanation or

---

[7] Defendants instead state that they plan to introduce evidence contradicting Quiero's retaliation claim at the discovery stage, and presumably will contest this claim in a later motion for summary judgment. (Doc. 14, at 3 n. 1-2).

disciplinary hearing. (Doc. 1, at 6). These allegations adequately plead that Quiero was denied due process under the Fourteenth Amendment. *See Stevenson*, 495 F.3d at 69.[8]

### 3. Free Exercise of Religion Claim

Quiero also claims that Ott constitutionally infringed on his freedom to exercise his religious beliefs under the First Amendment by denying Quiero access to religious services while he was confined in the RHU. (Doc. 1, at 6). The Third Circuit assesses a pre-trial detainee's free exercise claims under the same standard of constitutional protection afforded to sentenced inmates. *See, e.g.*, *Adegbuji*, 280 F. App'x at 148. Accordingly, the Court must weigh the following four factors in determining whether a prison regulation is a reasonable restriction on the exercise of religion: (1) a "valid, rational connection between the prison regulation and [a] legitimate governmental interest;" (2) "whether [the inmates or detainees have] alternative means of exercising" the religious practice; (3) whether accommodating the religious practice would adversely affect corrections officers and other inmates and detainees; and (4) whether an alternative to the restriction exists "that fully accommodates the prisoner's rights at *de minimus* cost to valid penological interests . . . ." *Turner v. Safley*, 482 U.S. 78, 91 (1987). Third Circuit jurisprudence further imposes a gateway consideration that "[o]nly beliefs which are both sincerely held and religious in nature are protected under the First Amendment." *Sutton v. Rasheed,* 323 F.3d 236, 251 (3d Cir. 2003).

---

[8] Defendants may well plan to introduce evidence that sheds light on the adequacy of procedures afforded pre-trial detainees in LCCF and the prison management concerns that underlie those procedures. However, it is not the role of the Court to speculate as to this evidence at the motion to dismiss stage. *Stevenson*, 495 F.3d at 68.

Here, Quiero satisfies the gateway pleading requirement that his beliefs are sincere by stating that he regularly attended bible studies and religious services while housed on his cellblock, but that those services became unavailable to him after he was placed in the RHU. (Doc. 1, at 6). Beyond this preliminary determination, the Court is unable to make a proper assessment of the *Turner* factors at the motion to dismiss stage because the fact-intensive inquiry called for in *Turner* requires at least some development of the evidentiary record. *See Brothers v. Lawrence Cnty. Prison Bd.*, No. CIV.A. 06-1285, 2008 WL 146828, at *5 & n.7 (W.D. Pa. Jan. 14, 2008) ("[S]uch a multi-factored fact-intensive test as *Turner*'s does not generally lend itself to being addressed in the context of a motion to dismiss . . . ."). Accordingly, it is recommended that Defendants' motion to dismiss be denied with respect to Quiero's free exercise claim.

### 4. Due Process Claim Involving Quiero's Bail Hearing

The final claim Quiero alleges against Ott is that Ott denied Quiero his rights under the Eighth and Fourteenth Amendment by forcing Quiero to attend a bail hearing while wearing the red jumpsuit of an inmate on disciplinary status, which was prejudicial to the judge's decision to set bail at $50,000. (Doc. 1, at 6). "While the [E]ighth [A]mendment does not grant an absolute right to bail, there is a substantive liberty interest in freedom from confinement." *United States v. Perry*, 788 F.2d 100, 112 (3d Cir. 1986). A detainee may pursue a § 1983 claim for the denial of the right to a reasonable bail. *Piskanin v. Hammer*, No. CIV.A. 04-1321, 2005 WL 3071760, at *13 (E.D. Pa. Nov. 14, 2005); *Harrison v. Abraham*, No. CIV.A. 96-4262, 1997 WL 256970, at *20 (E.D. Pa. May 16, 1997). The right to a reasonable bail may be violated if bail is set excessively high or if a defendant is prevented from posting bail after the amount is set. *Piskanin*, 2005 WL 3071760, at *13. A claim of excessive bail under the Eighth Amendment requires an assertion that a defendant played a significant role in the failure to set a reasonable

14

bail. *See James v. York Cnty. Police Dep't*, No. CIV.A. 101CV1015, 2005 WL 1154500, at *5 (M.D. Pa. May 6, 2005) *aff'd*, 160 F. App'x 126 (3d Cir. 2005) (per curium). Corrections officers do not possess the authority to set bail in Pennsylvania. *See* Pa. R. Crim. P. 520 (granting the "bail authority" the power to set bail); *see also* Pa. R. Crim. P. 103 (defining "bail authority" as magisterial district judges and other judges with jurisdiction over a case). Although it is still possible to allege a valid Eighth Amendment excessive bail claim against an individual that lacks authority to set bail, at a minimum the plaintiff must allege that the defendant manipulated the bond decision. *See James v. York Cnty. Police Dep't*, 160 F. App'x 126, 133 (3d Cir. 2005).

Here, Quiero's excessive bail claim must fail. First, he does not allege that the judge's decision to set bail at $50,000 was excessive, or that Ott interfered with Quiero's ability to post bail once the amount was set. *See Piskanin*, 2005 WL 3071760, at *13. Furthermore, he does not sufficiently state that any harm was suffered from this alleged constitutional deprivation because Quiero does not aver that he could have posted a lower bail amount. (Doc. 1, at 6). Even assuming, *arguendo*, that he had satisfied these requirements, Quiero's assertion must fail because he cannot sustain a claim that Ott manipulated the bail decision. *James*, 160 F. App'x at 133. Ott was not involved in the bail hearing itself, and any role he played in mandating Quiero's attire for the hearing fails as a matter of law to rise to the level of manipulation needed to sustain a § 1983 excessive bail claim. *See James*, 160 F. App'x at 133 (allegations that police officer gave false testimony to influence bond decision did not manipulate bail amount). The Court therefore recommends that Quiero's excessive bail claim be dismissed with prejudice.

### C. CLAIMS AGAINST KARNES

Quiero also asserts that Karnes is liable for the constitutional violations allegedly perpetrated by Muniz and Ott in his supervisory role as warden of LCCF because he failed to prevent the constitutional deprivations from occurring and also did not respond to Quiero's requests for relief. (Doc. 1, at 7). Defendants contend that Quiero fails to state a claim against Karnes because Quiero does not allege that Karnes was personally involved in any of the constitutional deprivations. (Doc. 14, at 3). "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)). However, "[a] defendant . . . cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Moreover, "[a]llegations of . . . actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Here, Quiero fails to allege that Karnes had actual knowledge and acquiesced to the wrongdoing. Quiero states that he made "many pleas to [the warden's] office for relief," but does not allege that Karnes ever personally received these pleas and learned of Quiero's grievances. (Doc. 1, at 6); *see Padilla v. Beard*, No. 1:CV-06-0478, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006) ("[A]n allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability."). Moreover, even if Karnes had knowledge of the constitutional violations, Quiero does not establish that he acquiesced to the wrongdoing because "participation in after-the-fact review of a grievance is

16

not enough to establish personal involvement." *Torres v. Clark*, No. 1:CV-10-1323, 2010 WL 3975640, at *2 (M.D. Pa. Oct. 8, 2010); *see Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants . . . based on their failure to take corrective action when grievances or investigations were referred to them."); *Ramos v. Pennsylvania Dep't of Corr.*, No. 4:CV-06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit.").

Finally, in his brief in opposition Quiero accuses Karnes of "display[ing] deliberate indifference" by refusing to reassign Muniz away from Quiero's cellblock. (Doc. 1, at 7). "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused constitutional harm.'" *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). However, he still fails to allege that Karnes had actual knowledge of an unconstitutional practice or custom, and does not claim his constitutional rights are violated by the fact that Muniz continues to periodically be assigned to patrol his cellblock. Accordingly, the Court recommends that all claims against Karnes be dismissed.

## IV.   LEAVE TO AMEND

The Court recognizes that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before a § 1983 claim is dismissed permanently, *see Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. *Alston v. Parker*, 363 F.3d 229,

235-36 (3d Cir. 2004). As such, it is recommended that Quiero be given the opportunity to file one amended complaint that is complete in all respects. An amended complaint must be a pleading that stands by itself without reference to the original complaint. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Should Quiero choose to amend his complaint, the amended complaint must establish the existence of actions taken by the Defendants which have resulted in constitutional deprivations. It must specifically allege actions or knowledge on the part of Warden Karnes that could impute personal involvement in constitutional violations at LCCF. Furthermore, to the extent that Quiero still wishes to plead that Karnes was deliberately indifferent as a policymaker, Quiero must point to a specific unconstitutional policy or custom and allege what Karnes did to maintain that policy or custom. However, the Court does not recommend granting leave to amend with respect to Defendant Muniz, because the conduct Quiero alleges simply does not rise to the level of a constitutional violation and therefore granting leave as to this particular Defendant would be futile. The Court likewise recommends that leave to amend with respect to Quiero's excessive bail claim against Defendant Ott also be denied as futile. Should Quiero choose not to amend his complaint and reassert his claims against Karnes, the Court will proceed solely on the remaining claims against Ott.

## V.  RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss (Doc. 12), be **GRANTED** in part and **DENIED** in part;

2. Quiero's claims against Defendant Muniz be **DISMISSED with prejudice** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and that the Clerk's office be directed to **TERMINATE** this defendant;

3. Quiero's excessive bail claim against Defendant Ott be **DISMISSED with prejudice** for failure to state a claim pursuant to Federal Rule of Civil

    Procedure 12(b)(6);

4. Quiero's claims against Defendant Karnes be **DISMISSED without prejudice** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);

5. Defendants' motion to dismiss be **DENIED** as to Quiero's remaining claims against Defendant Ott;

6. Quiero be given thirty (30) days leave to amend his complaint against the remaining Defendants in accordance with the foregoing and Rule 8(d)(1) of the Federal Rules of Civil Procedure; and

7. The matter be remanded to the undersigned for further proceedings.

                                                **BY THE COURT:**

**Dated: August 3, 2015**                          *s/ Karoline Mehalchick*
                                                 **KAROLINE MEHALCHICK**
                                                 **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVON C. QUIERO, JR., <br><br> Plaintiff, <br><br> v. <br><br> OFFICER MUNIZ, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:14-CV-00225 <br><br> (CAPUTO, J.) <br> (MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 3, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: August 3, 2015**                                               *s/ Karoline Mehalchick*
                                                                        **KAROLINE MEHALCHICK**
                                                                        **United States Magistrate Judge**