# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVON C. QUIERO, JR., | NO. 3:14-CV-0225 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| OFFICER MUNIZ, *et al.*, | (MAGISTRATE JUDGE ARBUCKLE) |
| Defendants. | |

## MEMORANDUM

Presently before me are the Objections (Doc. 62) of Plaintiff Avon C. Quiero, Jr. ("Plaintiff" or "Quiero") to the Report and Recommendation (Doc. 60) issued by Magistrate Judge William I. Arbuckle recommending that summary judgment be granted in favor of Defendants Robert Karnes ("Karnes") and Michael Ott ("Ott") (collectively, where appropriate, "Defendants"). Because Quiero was not retaliated against for engaging in protected First Amendment conduct, did not have his free exercise rights infringed upon, and was not denied due process, the Report and Recommendation will be adopted and summary judgment will be granted to Defendants on all claims.

## I. Background

As set forth in the Magistrate Judge's Report and Recommendation, the causes of action remaining in this case are Quiero's First Amendment retaliation, Fourteenth Amendment due process, and First Amendment free exercise claims against Karnes and Ott.[1] (*See* Doc. 60, 3).[2] These claims stem from events that occurred while Quiero

---

[1] Karnes is the Warden at the Lebanon County Correctional Facility. (*See* Doc. 57, Ex. "A", ¶ 1). Ott is the Captain of Security at that prison. (*See id.* at Ex. "B", ¶ 1).

[2] In detailing the facts relevant to Defendants' motion for summary judgment, the Magistrate Judge relied "heavily" on Defendants' Statement of Undisputed

was incarcerated at the Lebanon County Correctional Facility in the fall of 2013 as a sentenced state inmate on writ. (*See* Doc. 57, ¶ 1).[3]

On October 22, 2013, Quiero stopped Officer Muniz during a scheduled block check to inform him that he was missing his mattress sheet. (*See* Doc. 58, Ex. "A"). Muniz returned later with a replacement sheet, but that sheet was covered with drawings of male genitals. (*See id*.). Despite Quiero's complaints, Muniz instructed him that he could either use that sheet or sleep on the mattress. (*See id*.). Quiero stated that he would be filing a grievance against Muniz for sexual harassment. (*See id*.).

The next day, Quiero had a meeting with Ott about the allegation of sexual harassment. (*See* Doc. 57, ¶ 2; Doc. 62, Ex. "H", ¶ 2). Ott instructed Quiero to raise his complaint of sexual harassment in accordance with prison policies for filing grievances and contacting outside law enforcement officials. (*See* Doc. 57, Ex. "B", ¶ 5). After this meeting, Quiero attempted to contact outside agencies and also insisted that he should be provided a grievance form immediately without proceeding

---

Material Facts which he found "should be deemed admitted" because Quiero did not submit a responsive statement of facts as required by M.D. Pa. Local Rule 56.1. (Doc. 60, 4-5 n.3). The Magistrate Judge did, however, observe that Quiero filed a Declaration in opposition to the motion for summary judgment, which he also considered in setting forth the facts at issue in this litigation. (*See id*. at 6). The Magistrate Judge correctly noted that the docket did not contain a response from Quiero to Defendants' factual statement. However, Quiero's Declaration does reference an "accompanying Statement of Disputed Factual issues . . . pursuant to Rule 56 of this District Court," (Doc. 58, ¶ 3), which has now been filed as an exhibit to his objections. (*See* Doc. 62, Ex. "H"). For reasons explained in the text below, Defendants' statement of facts is not treated as unopposed, and I have instead taken the facts from both parties' statements, as well as the affidavits and documents of record.

[3] Although Quiero contends that he was a pre-trial detainee at the time of the events at issue, (*see* Doc. 62, Ex. "H", ¶ 1), which is consistent with the Magistrate Judge's statement to that effect in the Report and Recommendation, (*see* Doc. 60, 4), the evidence of record confirms that Quiero was not a pre-trial detainee. (*See, e.g.*, Doc. 57, Exs. "C","D").

2

through the request slip process. (*See* Doc. 57, Ex. "B-2"; *see also* Doc. 62, Ex. "H", ¶ 4).

Quiero was again summoned to Ott's office for a meeting on October 28, 2013. (*See* Doc. 57, ¶ 5; Doc. 62., Ex. "H", ¶ 5). After the meeting concluded and he was dismissed, Quiero slammed the door to Ott's office. (*See* Doc. 57, Ex. "B", ¶¶ 12-13).[4] Ott determined after the meeting that Quiero created an improper grievance form by ripping a page from his inmate handbook. (*See id*. at Ex. "B", ¶ 14).

Quiero was subsequently issued a major misconduct and transferred to the restricted housing unit ("RHU"). (*See id*. at Ex. "B", ¶¶ 15, 19). Ott informed other prison officials by email at 10:20 a.m. on October 28, 2013 that he would

> be writing a misconduct on this inmate for disrespect and destruction of county property. Had this inmate in my office explaining to him the proper procedure on how to file a complaint to the authorities which of course he could not understand. Had Officer VanDusen with me again as a witness. Inmate Quiero then left and threw the office door open and slammed it against the outside wall. Also his original complaint was written on an inmate handbook.

(Doc. 57, Ex. "4"). Ott also prepared a misconduct report, which indicated that the incident occurred at "Approximately 10:30 a.m. 10-28-13." (*Id*. at Ex. "3").

A hearing was held before the disciplinary board on the major misconduct charges on November 7, 2013. (*See id*. at Ex. "A", ¶¶ 10-11). Quiero was found guilty of those misconducts and sentenced to time served in the RHU. (*See id*.; *see also* Doc. 57, Ex. "B-4").

While Quiero was in the RHU, he sent written requests to prison chaplains asking for them to visit him in the RHU and to help with his allegation of harassment. (*See* Doc. 58-1, Ex. "B"). In an email to Karnes (among others), the prison Chaplain Manager stated that Quiero "has been seeking the help of the chaplains with regard to

---

[4] In his responsive statement of facts, Quiero insists that he did not slam the office door. (*See* Doc. 62, Ex. "H", ¶ 6). However, this averment does not include a citation to the record, (*see id*.), and Quiero does not otherwise identify any evidence to support that position. (*See* Doc. 58, *generally*).

3

his recent alleged 'harassment.' I inadvertently became involved when Mr. Quiero was attending a Bible Study taught by Chaplain Mendez and asked to speak to me. Since that time, he has been writing requests to us, including asking Chaplain Newman or Chaplain Dobbs to visit him in RHU." (*Id*.). Based on instructions that had been received in the past, the Chaplain Manager responded to Quiero's requests by informing him that chaplains "do not have a role in disciplinary matters and that his only option is the Prison's grievance process or the Prison Society." (*Id*.). Chaplain services for inmates housed in the RHU are available after an inmate requests to see the chaplain and security concerns are reviewed, at which point visits are permitted with shackled inmates outside of earshot of correctional officers but within the view of video surveillance cameras. (*See* Doc. 57, Ex. "A-1", ¶ 7). In order to request a meeting with a chaplain, an inmate housed in the RHU must submit an inmate request slip as instructed in the Lebanon County Correctional Facility inmate handbook. (*See* Doc. 57, ¶ 16; Doc. 62, Ex. "H", ¶ 16). While Quiero wrote to the Chaplain Manager during his time in the RHU requesting to be visited by Chaplain Newman or Chaplain Dobbs, (*see* Doc. 58-1, Ex. "B"), Quiero never submitted an inmate request slip to request a visit with a chaplain while he was in the RHU. (*See* Doc. 57, Ex. "A-1", ¶ 7). Quiero did not meet with a chaplain during this time. (*See* Doc. 57, ¶ 18; Doc. 62. Ex. "H", ¶ 18).

On May 24, 2017, Defendants filed a motion for summary judgment, supporting brief, and statement of undisputed facts. (*See* Docs. 55-57, *generally*). Quiero filed his opposition brief along with a Declaration and exhibits on June 14, 2017. (*See* Doc. 58, *generally*). Defendants filed a reply brief in further support of their motion on June 23, 2017. (*See* Doc. 59, *generally*).

On March 13, 2018, Magistrate Judge Arbuckle issued the instant Report and Recommendation presently under review. (*See* Doc. 60, *generally*). Therein, the Magistrate Judge recommends that Defendants' motion for summary judgment be granted in its entirety and that judgment be entered in favor of Defendants on all

4

claims remaining in this action. (*See id*.). Quiero timely objected to the Report and Recommendation. (*See* Doc. 62, *generally*). The Report and Recommendation and the objections thereto are now ripe for review.

## II. Discussion

**A.  Legal Standards.**

**1.  Review of a Report and Recommendation.**

When objections to the magistrate judge's Report are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this only applies to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo* determination." *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id*. at 7. In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Uncontested portions of the Report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g.*, *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**2.  Summary Judgment.**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues

of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

**B.   Quiero's Objections to the Report and Recommendation.**

Quiero, as stated, objects to the Magistrate Judge's recommendation that Defendants' motion for summary judgment be granted. (*See* Doc. 62, *generally*). Quiero essentially raises four objections to the Report and Recommendation. First, Quiero argues that it was improper for the Magistrate Judge to rely on Defendants' statement of material facts given his Declaration and Statement of Disputed Facts in opposition to the motion. (*See* Doc. 62, 4). Second, Quiero contends that the

6

Magistrate Judge's recommendation to grant summary judgment on the First Amendment retaliation claim should be rejected because the Magistrate Judge made impermissible credibility assessments in assessing the motion and failed to recognize "a clear and genuine dispute of material fact." (*Id*. at 8). Third, Quiero argues that as a pre-trial detainee (as stated by the Magistrate Judge), his due process rights were violated by Defendants' failure to follow Lebanon County Correctional Facility policy and/or provide him with a disciplinary hearing within 72 hours. (*See id*. at 9-11). Lastly, Quiero argues that summary judgment cannot be granted on his Free Exercise claim based on the email from the Chaplain Manager that he requested to be visited by a chaplain in the RHU, which Quiero finds confirms that "the inmate request form [was submitted] in accordance with LCCF policy." (*Id*. at 12). Quiero's objections will be overruled.

    **1.    Statement of Facts.**

With respect to his first objection, the Magistrate Judge did not err in finding Defendants' Statement of Facts to be undisputed given the record before him did not include a responsive statement of facts filed by Quiero. (*See* Doc. 58, *generally*). This District's Local Rules require a party opposing a motion for summary judgment to file "a separate, short and concise statement of the material facts" responding to the statement of facts filed by the party moving for summary judgment. M.D. Pa. L.R. 56.1. "A party's failure to comply with Local Rule 56.1 permits the court to deem the proponent's statement of material facts undisputed, even when the opposing litigant is *pro se*." *Larnerd v. Mong*, No. 14-1204, 2015 WL 5601949, at *2 (M.D. Pa. Sept. 21, 2015). Thus, while the Magistrate Judge was not wrong to accept as unopposed Defendants' factual statements that were supported by record evidence, I have declined to do the same here. This is because although Quiero in his filing in opposition to the motion for summary judgment did not include a responsive statement of facts, his Declaration clearly indicates that a responsive statement of facts was prepared to be used in opposing Defendants' summary judgment motion. (*See* Doc.

7

58, ¶ 3). While it is unclear why the responsive statement was not filed at that point, as it has now been provided in support of his objections to the Report and Recommendation, I have not deemed Defendants' statement of facts unopposed.[5] Instead, I have taken the facts from both parties' factual statements as well as the record evidence. Nonetheless, for reasons explained below, Defendants are entitled to summary judgment on each of Quiero's three remaining claims.

### 2. First Amendment Retaliation.

"In order to establish illegal retaliation for engaging in protected conduct, [an inmate] must prove that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (quoting *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). However, even if an inmate establishes a *prima facie* case of retaliation, "prison officials may still prevail if they establish that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Id*. (quoting *Rauser*, 241 F.3d at 334).

In the matter *sub judice*, the Magistrate Judge recommends that summary judgment be granted for lack of evidence that Quiero's commitment to the RHU was retaliatory. (*See* Doc. 60, 15). The Magistrate Judge explains that Quiero was sent to the RHU only after he destroyed county property and slammed Ott's office door, behavior which the Magistrate Judge found that Quiero did not deny. (*See id*.).

Quiero objects to this recommendation, arguing that within 24 hours of filing a grievance for sexual harassment, Ott placed him in the "RHU by making a false report that the plaintiff committed a Major Misconduct." (Doc. 62, 6-7). Quiero

---

[5] I do this because nothing before me suggests that Quiero's Statement of Disputed Facts was prepared after the issuance of the Report and Recommendation. Rather, by reference to that statement in his Declaration and because Quiero is proceeding *pro se*, I find it proper to consider it here under the circumstances.

8

further insists that the Magistrate Judge's "assertion that the behavior described by the defendant is unchallenged is simply not supported by the record." (*Id*. at 7; *see also id*. ("the defendant made a false misconduct report resulting in the plaintiff being transferred to the RHU . . . .")). Additionally, Quiero contends, like he did in opposition to Defendants' motion for summary judgment, that his RHU placement was retaliatory because Ott authored an email at 10:20 a.m. stating that Quiero would be transferred to the RHU but the misconduct report Ott prepared indicated that the incident in his office did not occur until 10:30 a.m. (*See id*.).

Taking these in reverse order, I agree with Magistrate Judge Arbuckle that the email and misconduct report authored by Ott do not support a finding that Ott decided to send Quiero to the RHU before the incident in his office even took place. This is the case because: (1) the email is clearly written in the past tense, demonstrating that Quiero's conduct had already occurred; and (2) the misconduct report prepared by Ott indicates that the incident in his office occurred at "approximately" 10:30 a.m. Thus, these documents do not bolster Quiero's retaliation claim.

Second, Quiero does not identify any record evidence refuting Ott's declaration regarding the events that occurred in his office, including Quiero's slamming of the office door and the destruction of county property. Indeed, although Quiero asserts in his Statement of Disputed Facts that "[n]o door was slammed or disrespect given," he does not provide any record citation to support this statement. (Doc. 62, Ex. "H", ¶ 7). And, Quiero's Declaration submitted in opposition to the motion for summary judgment is silent on this issue and does not contain a denial of the claim that he slammed Ott's office door following the October 28, 2013 meeting. (*See* Doc. 58, *generally*).

Given this, I agree with the Magistrate Judge that Quiero is unable to establish

9

a *prima facie* case of retaliation.[6] The record evidence demonstrates that Quiero was placed in the RHU based on his insubordination and destruction of county property, not because of the filing of grievances. While Quiero disputes this conclusion, he does not do so with citation to any record evidence. Thus, no genuine issue of material fact exists with respect to this claim. Summary judgment will therefore be granted to Defendants on the First Amendment retaliation claim.

### 3. Due Process.

Quiero next claims that his due process rights were violated because: (1) he did not receive a disciplinary hearing within 72 hours as guaranteed by prison policy; and (2) he was deprived of a liberty interest when he was sent to the RHU. (*See* Doc. 62, 9-11).

As to the first point, as observed by the Magistrate Judge, there is no evidence of record establishing that the Lebanon County Correctional Facility had a policy guaranteeing an inmate a hearing within 72 hours of being placed in the RHU. (*See* Doc. 60, 16). Rather, the policy cited by Quiero provides only that disciplinary hearings are "usually held within seventy-two (72) hours (excluding weekends and holidays) of the incident to consider the charge brought against him or her." (Doc. 57, Ex. "B-3").

Quiero's Fourteenth Amendment rights were also not violated by his placement in the RHU. As stated in the margin above, Quiero was a sentenced inmate at the time of the events at issue, not a pre-trial detainee. Placement in administrative confinement will generally not create a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). Instead, a "liberty interest only exists if that placement is an 'atypical and significant hardship' relative to others similarly sentenced."

---

[6] Moreover, as stated in the Report and Recommendation, there is no evidence in that record that Karnes was involved in the decision to place Quiero in the RHU or to charge him with a major misconduct.

*Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 484, 115 S. Ct. 2293). Here, the record is devoid of any evidence that Quiero suffered an "atypical and significant hardship" by being placed in the RHU for less than two weeks. *See Diaz v. Canino*, 502 F. App'x 214, 218 (3d Cir. 2012) (citing *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (holding that no protected liberty interest was affected by 360 day confinement in the RHU). Defendants will be granted summary judgment on Quiero's due process claim.

### 4. Free Exercise.

Lastly, Quiero objects to the Magistrate Judge's recommended disposition of his free exercise claim. According to Quiero, the evidence of record, *i.e.*, an email from the Chaplain Manager, demonstrates that he submitted an inmate request form asking to be visited in the RHU by a prison chaplain. (*See* Doc. 62, 11-12). This email, Quiero argues, contradicts Defendants' position that he did not properly request religious services, and, as a result, a genuine factual dispute exists precluding summary judgment. (*See id*. at 12). I disagree and will adopt the Magistrate Judge's recommendation that summary judgment be granted on the free exercise claim.

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987) (citations omitted). But, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817, 822-23, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id*. at 822, 94 S. Ct. 2800.

In concluding that Defendants are entitled to summary judgment on the Free Exercise claim, the Magistrate Judge first notes that although Quiero argues that an email from the Chaplain Manager demonstrates that a request for chaplain services was requested, that email actually suggests that his requests were submitted directly to the chaplains and not through the proper "inmate slip request" system. (*See* Doc. 60, 21-22 n.5). This is consistent with the undisputed evidence of record. (*See* Doc. 57, Ex. "A", ¶ 18). Again, while Quiero argues that "[t]hese requests were sent via the inmate request form in accordance with LCCF Policy," (Doc. 62, 12), he does not supply any evidence in opposition, including in his Declaration, to support the statement that he submitted a request slip for chaplain services in accordance with prison policy. Instead, all he cites is the Chaplain Manager's email to prison officials indicating that the chaplains were requested to visit Quiero in the RHU. (*See* Doc. 58, ¶ 14 ("I was denied access to the chaplains and the ability to exercise my religion despite numerous requests to see the chaplains and exercise my religion (see [Chaplain Manager's email]).")). As discussed by the Magistrate Judge, that email indicates that the requests were not properly submitted through a request slip.

I also agree with the Magistrate Judge's analysis of the limitation on Quiero's access to religious services while in the RHU pursuant to *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). There, the Supreme Court articulated the standard for reviewing a prison regulation challenged on constitutional grounds. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S. Ct. 2254. *Turner* identified the following four factors for a court to consider in assessing the ultimate reasonableness of a prison regulation: (1) "whether the regulation bears a valid rational connection' to a legitimate and neutral government objective;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources

generally;" and (4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-90, 107 S. Ct. 2254; *see also Fraise v. Terhune*, 283 F.3d 506, 513-14 (3d Cir. 2002) (citations omitted).

There factors, as detailed by the Magistrate Judge, weigh in favor of finding that the prison's regulation of inmate access to religious services while in the RHU did not interfere with Quiero's free exercise of his religion. (*See* Doc. 60, 23-25). Moreover, Quiero does not provide any challenge to the Report and Recommendation's *Turner* analysis. Summary judgment will be granted in favor of Defendants on the free exercise claim as well.

### III. Conclusion

For the above stated reasons, the Report and Recommendation will be adopted and Defendants' motion for summary judgment will be granted.

An appropriate order follows.

May 14, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge